## Case No. 14,364.

### The UNION EXPRESS.

[1 Brown, Adm. 537.] [1]

District Court, E. D. Michigan. Sept., 1874.

MARITIME LIENS—MONEY ADVANCED ON REQUEST OF OWNER—NECESSARIES FURNISHED IN HOME PORT.

1. A maritime lien exists for moneys advanced to purchase or pay for necessaries supplied to a

---

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

ship wherever it would exist for the necessaries themselves.

2. Such lien exists for necessaries furnished upon request of the owner wherever it is shown affirmatively they were furnished on the credit of the vessel.

[Cited in Stephenson v. The Francis, 21 Fed. 722; The Chelmsford, 34 Fed. 402; The Allianca, 63 Fed. 732.]

3. Where money was advanced by one who held the legal title to the vessel under a bill of sale given to him as security for the indorsement of a note which had been paid by the maker and the bill of sale thereby extinguished, held, the lien was not thereby defeated.

4. Where, however, libellant was jointly interested with the equitable owner in the profits of one trip, held, he could not recover for advances made during that trip.

5. Parties may stipulate for a lien for necessaries, notwithstanding that no such lien is implied by the law of the place where such necessaries are furnished.

[Cited in The General Tompkins, 9 Fed. 621.]

6. By the general maritime law a lien exists for necessaries furnished a domestic vessel, even though by the law of the place there may be no jurisdiction to enforce it.

This was a libel in rem brought by John H. Eakin against the barge Union Express, a Canadian vessel. for moneys advanced by him to procure and pay for necessaries supplied to the barge, partly at Detroit, in this state and district, and partly at Windsor, in the province of Ontario, the home port of the vessel.

J. W. Finney and H. H. Swan, for libellant.

(1) Money advanced for the purchase of supplies constitutes a lien upon the vessel, equally with the supplies and repairs furnished directly to the vessel. Thomas v. Osborn, 19 How. [60 U. S.] 28; The Lulu. 10 Wall. [77 U. S.] 203; The Grapeshot, 9 Wall. [76 U. S.] 141; The Emily B. Souder [Case No. 4,454]; The Kalorama, 10 Wall. [77 U. S.] 204.

(2) Libellant is not deprived of his lien by the fact that the advances were made to the owner. since credit was not given to him. The Guy, 9 Wall. [76 U. S.] 758; The Kalorama, 10 Wall. [77 U. S.] 213.

(3) This lien exists for advances made in Canada. See brief in preceding case. [Case No. 2,583.]

Alfred Russell, for claimant.

(1) Granting that Eakin was not the owner, but that Robarsh was, we say that no lien is implied from contracts made by the owner in person. Conk. Adm. 7, 59; The St. Jago de Cuba, 9 Wheat. [22 U. S.] 416. 417; Beldon v. Campbell. 6 Eng. Law & Eq. 473: Pratt v. Reed, 19 How. [60 U. S.] 361; The Sophie, 1 W. Rob. Adm. 369; Thomas v. Osborn. 19 How. [60 U. S.] 29, 38. 40. 43.

(2) A person who loans money to be used in repairing a vessel is not a material-man, and can have no lien upon the vessel. Law-

son v. Higgins, 1 Mich. 225; 2 Pars. Shipp. & Adm. 148, note 4.

(3) Credit given to the builder or owner creates no lien. The Abby Whitman [Case No. 15].

(4) For all advances on this side the river libellant took notes of Robarsh, which are not produced or surrendered to be canceled. 2 Pars. Shipp. & Adm. 153, note 1.

(5) Charges for telegrams are not liens. The Jos. Cunard [Case No. 7,535]. As to the necessity which will give a lien for borrowed money, see Bulgin v. The Rainbow [Id. 2,116]; The Perseverance [Id. 11,017]; The Maitland [Id. 8,979].

LONGYEAR, District Judge. The position of respondent's advocates, that there is no lien by the maritime law for moneys advanced to purchase or pay for necessaries supplied to a ship in any case, has been fully disposed of against the proposition by numerous decisions of the supreme court; and it may be regarded as well settled law, that a maritime lien exists for such advances, in all cases where it existed for the necessaries themselves. Thomas v. Osborn, 19 How. [60 U. S.] 22, 28. In this case, Mr. Justice Curtis, delivering the opinion of the court, says: "It is not material whether the hypothecation is made directly to the furnishers of repairs and supplies, or to one who lends money on the credit of the vessel, in a case of necessity, to pay such furnishers." And since that decision, the same doctrine has been frequently reiterated and applied by that court, down to a very recent period. The Grapeshot, 9 Wall. [76 U. S.] 129, 141; The Lulu, 10 Wall. [77 U. S.] 192, 203; The Emily B. Souder [Cases Nos. 4,454 and 4,456].

The position of respondent's advocates that no lien arises or is implied for necessaries supplied on request of the owner, has also been fully settled against the proposition by the same high authority; and it is settled law that a lien may arise or be applied as well in such a case as where they were supplied on request of the master, in the absence of the owner, the only difference being that where supplied on request of the owner, the facts that the supplies were necessary and that they were furnished on the credit of the vessel as well as of the owner, must be made to appear, while in the other case those facts are presumed. The Guy, 9 Wall. [76 U. S.] 758; The Kalorama, 10 Wall. [77 U. S.] 204, 213. In the case of The Kalorama, the court say: "Implied liens, it is said, can be created only by the master; but if it is meant by that proposition that the owner or owners, if more than one, cannot order repairs and supplies on the credit of the vessel, the court cannot assent to the proposition, as the practice is constantly otherwise." "Undoubtedly," say the court, "the presence of the owner defeats the implied authority of the master, but the presence of the owner would not destroy such credit as is necessary to furnish food to the mariners, and save the vessel and cargo from the peril of the seas." "More stringent rules," they say, "apply as between one part owner and another, but the case is free from all difficulty if all the owners are present, and the advances are made at their request or by their direction, and made on agreement, express or implied, that the same are made on the credit of the vessel." See, also, Taylor v. The Commonwealth, Eastern District of Missouri [Case No. 13,788].

In the present case, the proofs showed the following facts: That the repairs, materials, &c., to pay for which libellant's advances were made, with two or three unimportant exceptions, were necessary to enable the barge to prosecute her business; that Robarsh, the person on whose request the advances were made, was the equitable owner as well as master, during the whole time the advances were being made, although the legal title was in another person; that Robarsh was utterly irresponsible and without credit; that libellant made the advances on the express understanding and agreement with Robarsh that he should have a lien on the barge therefor, and the advances were accordingly charged by libellant, upon his books, directly to the barge, by name. Here are all the elements combined necessary to create a lien. See authorities above cited.

It was claimed that libellant held the legal title of the vessel, as security, by a bill of sale or mortgage, and it was contended that therefore any lien he may have was not a maritime lien, enforceable in this court. The facts in that regard are as follows: Previous to the transactions here in question, Eakin had indorsed Robarsh's note for $150, and to secure himself had taken a bill of sale of the barge from one Shipley, in whom the legal title then stood. The note was afterwards paid with Robarsh's money, and Eakin never became liable or suffered any loss on account of the transaction. Afterwards, when the advances here in question were in contemplation, Eakin refused to make them on Robarsh's personal responsibility, and it was agreed that he should have a lien upon the barge for the same. The bill of sale, although extinguished by the payment of the $150 note, still remained in Eakin's possession, and Robarsh indorsed upon it a sort of release to Eakin of all his interest, right and title in and to the barge, both parties supposing and intending that the Shipley bill of sale was thereby made a continuing security to Eakin; and so matters remained during the whole time the advances were being made. After the advances had all been made, Robarsh, without the knowledge or consent of Eakin, sold the barge, and caused her to be duly and legally conveyed to John Pridgeon, claimant and respondent in this suit, and he claims to own the barge free and clear of any lien whatever in favor of Eakin. The

grounds upon which this claim is based are: (1) That by virtue of the bill of sale from Shipley to Eakin, the latter was legal owner of the barge while the advances were being made, and no lien could accrue to the owner; or (2) if not owner, he was at least a mortgagee for security of the advances, and his only remedy is by foreclosure of his mortgage, which cannot be accomplished in this suit or court.

In the first place. the bill of sale being for security merely, it was extinguished and ceased to be of any force or effect whatever by the payment of the note to secure which it was given; and, in the second place, it was not in Robarsh's power to revive it or confer upon Eakin any right or title under it, as mortgagee or otherwise, without the co-operation and deed of the person who held the legal title. The transaction, however, makes it evident that it was the understanding between Robarsh and Eakin that the advances in question were made by the latter on the credit of the barge, and so it supports Eakin's claim to a maritime lien, and a right of action in rem in this court. The Kalorama, 10 Wall. [77 U. S.] 213, 214. As master and equitable owner. it was competent for Robarsh to bind the vessel to that extent, but he could convey no legal title by way of mortgage or otherwise, because he had none himself.

The proofs show that during a portion of the time the advances were being made, Eakin was jointly interested with Robarsh in the operations of the barge. The joint interest, however, extended to only one trip and cargo. The items of libellant's claim arising out of that joint transaction amount in the aggregate to $136.23. This amount was withdrawn by libellant at the hearing. and must be deducted from libellant's claim. The amount so withdrawn includes an item for tonnage duties. and nearly all the items for telegrams embraced in libellant's account, and on account of which it was claimed no lien could arise; and it also includes the only item for which Robarsh's note was taken by Eakin, and not delivered up at the hearing. and therefore the questions raised as to all those items have become immaterial. A few items of the same character, mostly for telegrams, remain in the account, but they are insignificant in amount, and although, standing alone, they would probably create no lien, yet they seem to have been intimately connected with transactions for which there is a lien, and they will not be rejected.

A portion of the supplies for which libellant made advances, amounting in the aggregate to $98.50, were furnished at Windsor. opposite Detroit, and in the province of Ontario, and while the barge was at that port. Windsor was the home port of the barge at the time, and it is contended that as to this amount at least libellant had no lien. for the reason that none exists in such cases by the maritime law as administered in England, and that the laws of England were the laws

of Ontario; and the argument is, there being no liens for the supplies themselves, there could be none for advances made to pay for them. The conclusion stated undoubtedly follows from the premise stated; but I think the premise cannot be maintained, for two reasons: 1. It was expressly agreed between Eakin and Robarsh, who, as we. have seen, was entirely competent to make the agreement so as to bind the vessel, that Eakin should have a lien upon the barge for all advances made by him to pay for supplies, without any exception or limitation as to the place or places where the supplies themselves should be furnished or the advances should be made. 2. By the general maritime law there is a lien for necessaries supplied to a domestic as well as a foreign ship, the only difference being that, in regard to a domestic ship, the necessity and the fact that the supplies were furnished on the credit of the ship must be proven, while, in regard to a foreign ship, those matters are presumed. See authorities before cited, and especially Taylor v. The Commonwealth [supra]. This lien in fact exists in places subject to the laws of England, notwithstanding the jurisdiction to enforce it there is denied. The Champion [Case No. 2,583]. decided by this court at the present term. And since the recent amendment of general admiralty rule 12. the general maritime law prevails in and is administered by the admiralty courts of the United States in regard to liens for supplies in a domestic as well as in a foreign port; and this, notwithstanding there may be no jurisdiction to enforce them in the locality where the supplies were furnished. The Maggie Hammond, 9 Wall. [76 U. S.] 435, 481, 482; The Commonwealth and The Champion, supra. It is true, in cases where the parties, the vessel and the place of the contract or port are all foreign, the entertainment of jurisdiction by our courts in any case is a matter of comity, and not a matter of right; and where in such case they are all subjects of the same foreign country, and in which there is no jurisdiction to enforce such liens. and citizens of the United States could not have the same remedies there as are accorded to such foreigners here, our courts will not in general entertain the jurisdiction, but they may do so in their discretion. The Maggie Hammond, supra. In the present case the libellant is described in the libel as a citizen of Detroit, in this district, and no issue was made as to that allegation. The claimant is also a citizen of the United States. From what has been said, it results that the objection to the allowance of a lien for the advances made to pay for necessaries supplied in the province of Ontario is not well taken.

Four items of credit were claimed—one of $300, one of $21. one of $50, and one of $84.68. The item of $300 was satisfactorily shown to have been entered by the book-keeper by mistake, and cannot be allowed. The item of $50 related to the joint adventure, and must

be rejected with the account relating to that matter. The remaining items, amounting to $105.68, must be allowed. The whole amount of advances made by libellant, after deducting the amount arising out of the joint adventure, is $637.17, as proven. Deducting the credits allowed, the balance in favor of libellant is $531.89, on which amount interest must be allowed at seven per centum per annum for one year and nine months, that being a fair average of the time the advances have run.

Balance of debt.................... $531 89
Int., 1 year and 9 months, at 7 per
cent. ...................../.......... 65 16

Making a total of.............. $597 05

For which libellant must have a decree, with costs. Decree accordingly.